United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF THE LABORERS PENSION TRUST FUND FOR NORTHERN CALIFORNIA,<br><br>    Plaintiff,<br><br>  v.<br><br>ROBERTO PASTRAN, JR., an individual, and RAMON PASTRAN a.k.a. RAYMOND PASTRAN, an individual,<br><br>    Defendants. | No. C 09-05979 WHA<br><br>**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT** |

**INTRODUCTION**

In this ERISA action, plaintiff Board of Trustees of the Laborers Pension Trust Fund for Northern California moves for default judgment against defendant Ramon Pastran following his failure to appear in this action and respond to the complaint. Plaintiff alleges that defendant Ramon Pastran fraudulently cashed his deceased father's pension checks for a period of six years following his death. The Board of Trustees seeks to recover these wrongfully obtained pension benefits. For the following reasons, plaintiff's motion for default judgment is **GRANTED**.

**STATEMENT**

The Board of Trustees of the Laborers Pension Trust Fund for Northern California filed this action on December 22, 2009, alleging that defendant Roberto Pastran, Jr. wrongfully and fraudulently received pension benefits payable to his father, Roberto Pastran, Sr., for a period of

six years following his death (Dkt. No. 1). On March 2, following further investigation of the matter, plaintiff filed an amended complaint adding Ramon Pastran — another son of Roberto Pastran, Sr. — as a defendant.* Shortly thereafter, defendant Roberto Pastran, Jr. was voluntarily dismissed from the action.

Pensioner Roberto Pastran, Sr. retired from employment and was awarded lifetime pension benefits in July 1981. He passed away in March 2003. No notice was given to the Board of Trustees of the Laborers Pension Trust Fund for Northern California that Robert Pastran, Sr. was deceased. Despite his father's death, defendant Ramon Pastran continued to collect his father's pension checks over a six year period. To accomplish this deceit, he forged his father's signature on the "Annual Statement by Pensioner" certification form to falsely represent to plaintiff that his father was still alive and eligible to receive his pension benefits. Defendant Ramon Pastran also forged his father's signature on the checks themselves, cashed them, and used the funds for his own purposes. According to plaintiff, Ramon Pastran collected no less than $68,183.50 in pension benefits through these fraudulent acts.

The amended complaint alleged four claims against defendant Ramon Pastran: (1) fraud, (2) conversion, (3) unjust enrichment, and (4) equitable restitution under Section 502(a)(3) of ERISA, 29 U.S.C. 1132(a)(3) (Compl. ¶¶ 4–28). Substitute service was effected on Ramon Pastran on April 17, 2010 (Dkt. No. 24 ("First Norris Decl.") ¶¶ 3–4). He failed to answer. On May 18, plaintiff filed a case management statement explaining that upon serving Ramon Pastran, the process server learned from his live-in caregiver that defendant was in the hospital after suffering a stroke (Dkt. No. 20). Given this news, rather than immediately move for entry of default, plaintiff wrote a letter to defendant on May 14 requesting that he respond to the complaint, contact an attorney, or contact plaintiff's counsel by May 21 (Dkt. No. 36 ("Second Norris Decl.") ¶ 6, Exh. A). Plaintiff received no response to this letter. On June 1, plaintiff's counsel contacted Ramon Pastran's live-in caregiver directly and learned that defendant had received the summons and complaint and was recovering at his home. In this conversation,

---

\* As noted in the complaint, Ramon Pastran also goes by the name Raymond Pastran (Compl. ¶ 8).

2

defendant's caregiver mentioned to plaintiff's counsel that Ramon Pastran's physical condition might not improve and that he was not able to respond to the complaint (First Norris Decl. ¶ 2). Shortly thereafter, plaintiff moved for entry of default against Ramon Pastran. Default was entered on June 10 (Dkt. No. 25).

A hearing on the instant motion was held on September 22. Defendant Ramon Pastran was properly served with notice of the instant motion as well as the September 22 hearing date. He did not appear at the hearing, either personally or through counsel.

## ANALYSIS

FRCP 55(b)(2) permits a court, following an entry of default, to enter default judgment against a defendant. "The district court's decision whether to enter default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). To assist courts in determining whether default judgment is appropriate, the United States Court of Appeals for the Ninth Circuit has enumerated the following seven factors for courts to consider: (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim(s), (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of dispute concerning material facts, (6) whether default was due to excusable neglect, and (7) the strong policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Upon entry of default, all factual allegations within the complaint are accepted as true except allegations relating to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). Additionally, the scope of relief granted by default judgment is limited by FRCP 54(c), which states that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

### 1. SERVICE OF PROCESS

Under FRCP 4(e)(2)(B), serving a suitable copy of the summons and complaint at an individual defendant's dwelling with someone of suitable age and discretion who resides there constitutes proper service. On April 17, one copy of both the summons and complaint was left at defendant's home with his live-in caregiver. Additionally, a separate copy of the summons and complaint was mailed to defendant (First Norris Decl. ¶ 3). According to defendant's live-in

3

caregiver, defendant Ramon Pastran received these documents. Given these facts, this order finds that service of process upon defendant Ramon Pastran was adequate.

### 2. MERITS OF THE CLAIMS AND THE SUFFICIENCY OF THE COMPLAINT

As a threshold matter, this order finds that defendant Ramon Pastran is not an infant, incompetent person, a soldier in military service, or otherwise exempted from default judgment under the Servicemembers Civil Relief Act (Second Norris Decl. ¶ 8).

#### A.  Claim One:  Fraud

To prevail on a claim for fraud, a plaintiff must prove (1) a knowingly false representation by the defendant, (2) an intent to deceive or induce reliance, (3) justifiable reliance by the plaintiff, and (4) resulting damages. *Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 173 (2003). FRCP 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The rule demands that averments of fraud be accompanied by "the who, what, when, where, and how" of the misconduct charged. *See Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003). Additionally, a "plaintiff must set forth what is false or misleading about a statement, and why it is false." *Ibid.*

These requirements have each been met. The first amended complaint stated with particularity that defendant Ramon Pastran forged his father's signature on the "Annual Statement by Pensioner" certification form to falsely and intentionally represent to plaintiff that Roberto Pastran, Sr. was still alive and eligible to receive pension benefits. The complaint also alleged that for a six year period following his father's death, Ramon Pastran forged his father's signature on pension checks and cashed them for his own benefit, wrongfully collecting no less than $68,183.50 in unearned pension payments. Copies of Roberto Pastran, Sr.'s death records and the falsified certification forms and checks are attached to the declaration filed by plaintiff in support of the instant motion (*See* Declaration of Edwin Embry). Treating the allegations in the complaint as true, there is no question that plaintiff's fraud claim is meritorious and that the claim has been properly pleaded.

4

### B. Claim Two: Conversion

The elements of the tort of conversion are: (1) the plaintiff's ownership or right to possession of personal property, (2) the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights, and (3) resulting damages. *Fremont Indem. Co. v. Fremont General Corp.*, 148 Cal. App. 4th 97, 119 (2007).

Accepting the factual allegations in the complaint as true, there is no question that plaintiff owned and had the right to possession of the pension benefits wrongfully acquired by defendant Ramon Pastran. There is also no question that defendant misrepresented to plaintiff that his father was still alive and cashed his deceased father's pension checks in a manner inconsistent with plaintiff's property rights. Plaintiff clearly suffered damages as a result of defendant's actions. Accordingly, plaintiff's conversion claim is undoubtedly meritorious and properly pleaded.

### C. Claim Three: Unjust Enrichment

It is unsettled whether unjust enrichment is a valid claim for relief under California law. According to one line of decisions, unjust enrichment is not a claim for relief but "a general principle" that is "synonymous with restitution" underlying "various legal doctrines and remedies." *McBride v. Boughton*, 123 Cal. App. 4th 379, 389 (2004) (citations omitted). Under a different line of decisions, a claim for unjust enrichment may be validly stated by alleging the receipt of a benefit and the unjust retention of the benefit at the expense of another. *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000).

Given the merits of plaintiff's other three claims, resolving this question is unnecessary. As explained herein, plaintiff has more than sufficiently demonstrated its entitlement to the full relief requested under its claims for fraud, conversion, and equitable restitution under ERISA.

### D. Claim Four: Equitable Restitution Under ERISA

Plaintiff's final claim is for equitable restitution under Section 502(a)(3) of ERISA, 29 U.S.C. 1132(a)(3). This section states:

> A civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan [.]

5

As alleged in the complaint and set forth in the declaration of Edwin Embry, plaintiff is a fiduciary under ERISA and is therefore eligible to bring a civil action to obtain equitable relief to redress violations of the Act or to enforce the provisions of the plan (Embry Decl. ¶ 1). *See* 29 U.S.C. 1132(a)(3). Additionally, plaintiff has more that adequately pleaded and proven that defendant violated the terms of his father's ERISA pension plan by fraudulently representing to plaintiff that his father was still alive and converting his father's pension checks for his own use. This claim is both meritorious and sufficiently pled.

### 3. THE REMAINING EITEL FACTORS

The remaining *Eitel* factors favor the entry of default judgment against defendant. *First*, if the motion is not granted, plaintiff will be left without a remedy to recover $68,183.50 in pension benefits wrongfully paid to and received by defendant Ramon Pastran. *Second*, while defendant never responded to the complaint, it is unlikely that the material facts herein will be disputed. The death records submitted by plaintiff establish that Roberto Pastran, Sr. passed away in March 2003. Nevertheless, *someone* maintained the guise that he was alive for another six years. While plaintiff could have appeared in this action to dispute his involvement in the scheme alleged, he did not. *Third*, there is no evidence that defendant's failure to respond to the complaint or appear in this action was the result of excusable neglect. If it turns out that defendant's medical condition was a valid reason for this failure, such evidence can be presented in a properly filed motion to set aside the default judgment. *Fourth*, given the circumstances of this action, the sum of money requested by plaintiff weighs in favor of default judgment. Plaintiff only seeks to recover the $68,183.50 in pension benefits wrongfully paid to and received by defendant Ramon Pastran, plus reasonable attorney's fees and costs associated with obtaining this relief. This request is both reasonable and justifiable. Finally, although federal policy always favors a decision on the merits, Rule 55(b) plainly allows entry of default judgment where the defendant does not participate in the litigation.

In sum, after careful consideration of all of the *Eitel* factors, this order finds that the entry of default judgment against Ramon Pastran is warranted.

6

### 4. SCOPE OF RELIEF

Plaintiff seeks $68,183.50 in wrongfully received pension benefits, $21,997.50 in attorney's fees, and $1,869.23 in litigation costs. Given the extensive documentation submitted by plaintiff with respect to the pension benefits actually paid to defendant following his father's death, this order will award the requested $68,183.50 in overpaid pension benefits to plaintiff.

With respect to plaintiff's requested award of attorney's fees and costs, Section 502(g)(1) of ERISA states:

> In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

29 U.S.C. 1132(g)(1). Claim four in this action — brought pursuant to Section 502(a)(3) of ERISA — qualifies under Section 502(g)(1) of the Act.

The discretion given to courts to award fees under this section is exercised liberally in favor of granting attorney's fees to successful plaintiffs "unless special circumstances would render such an award unjust." *Elliot v. Fortis Benefits Ins. Co.*, 337 F.3d 1138, 1148 (9th Cir. 2003). Although no single factor is dispositive, a court should generally consider five factors in determining whether or not to award attorney's fees for an ERISA claim: (1) the degree of the opposing party's culpability or bad faith, (2) the ability of the opposing party to satisfy an award of fees, (3) whether an award of fees would deter others from acting under similar circumstances, (4) whether the party requesting fees seeks to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA, and (5) the relative merits of the parties' positions. *Hummell v. S. E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980).

Accepting the factual allegations in the complaint as true, defendant Ramon Pastran fraudulently misrepresented to plaintiff that his deceased father, Roberto Pastran, Sr., was still alive in order to continue receiving his pension checks. He then forged his father's signature on each of these checks, cashed them, and used the funds for his own purposes. This went on for six years. Given this backdrop, an award of reasonable attorney's fees and costs is warranted given the high degree of bad faith and culpability surrounding Ramon Pastran's actions. Such an award will also deter others from similar fraudulent acts in the future. Most important, an award of

7

reasonable attorney's fees and costs would benefit all participants of the pension plan by restoring funds expended by plaintiff to litigate this action. Finally, as discussed herein, plaintiff's position is clearly meritorious.

Because these factors weigh heavily in favor of granting a reasonable award of attorney's fees and costs, this order — after vetting the detailed fee breakdown submitted by plaintiff's counsel in support of the instant motion — approves plaintiff's request for $21,997.50 in reasonable attorney's fees. Plaintiff will also be entitled to taxable costs. The amount of taxable costs, however, will be determined in strict compliance with the local rules.

## CONCLUSION

For the reasons set forth above, plaintiff's motion for default judgment is **GRANTED**. Judgment in favor of plaintiff and against defendant Ramon Pastran in the amount of $68,183.50 in overpaid pension benefits and $21,997.50 in attorney's fees will be entered accordingly. Following the entry of judgment, plaintiff may serve and file a bill of costs pursuant to the civil local rules.

**IT IS SO ORDERED.**

Dated: September 27, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE